NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMAZAN K., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No.: 21-6848 <br><br> **OPINION** |

**CECCHI, District Judge.**

I.   **INTRODUCTION**

Before the Court is the appeal of Ramazan K.[1] ("Plaintiff") seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). ECF No. 1; *see also* ECF No. 12 ("Pl. Br."). The Commissioner opposed the appeal. ECF No. 15 ("Opp."). This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

II.   **BACKGROUND**

Plaintiff is a 39-year-old with four or more years of college, although he did not obtain a college degree. ECF No. 6 ("Tr.") at 44. He previously worked as a janitor and a waiter, and was enlisted in the armed forces from 2008 through 2011 on active duty. *Id.* at 216. Plaintiff testified

---

[1] Pursuant to District of New Jersey standing order 2021-10, "any non-governmental party will be identified and referenced solely by first name and last initial" due to privacy concerns present in social security cases. D.N.J. Standing Order 2021-10; *see also Bryan S. v. Kijakazi*, No. 20-cv-11145, 2022 WL 2916072, at *1 n.1 (D.N.J. July 25, 2022).

that his last period of employment was for a cleaning company where he worked about 15 hours per week; he stated he did not seek more hours "because the pay was low." *Id.* at 45–46. Plaintiff contends that, for the period of alleged disability, he was unable to work as a result of: post-traumatic stress disorder ("PTSD"), panic attacks, bipolar disorder, anxiety disorder, kidney stones, insomnia, and depression. *Id.* at 65–67, 78–80. However, Plaintiff stated that he maintained his personal care, did not need special reminders to take care of himself, and was able to travel independently. *Id.* at 247–49. While he had trouble sleeping and was intermittently homeless (*id.*), he testified that at the time of the hearing, he was living with family members (including his wife, mother, and daughter) and that he spent time with his family, went food shopping, cared for his daughter, and read (*id.* at 56–57). He also testified he had no physical limitations, and often worked out four times per week by playing soccer and basketball. *Id.* at 58, 391.

### A.     Plaintiff's Waiver of Representation

On November 30, 2017 and February 28, 2018, the agency sent Plaintiff letters which informed him that he could have a "friend, lawyer, or someone else help" him with his claim. *Id.* at 121–26, 133–35. One of the letters explained that there were groups that could help him obtain free legal services if he qualified, and both letters stated that there were lists of lawyers available. *Id.* at 123, 135. Without retaining an attorney, Plaintiff filed his requests for reconsideration and a hearing. *Id.* at 127, 136. Letters acknowledging those requests again explained that he had a right to be represented. *Id.* at 127, 137. A May 2, 2018 letter detailing the hearing, and a May 14, 2019 follow-up letter informing Plaintiff of the time and location, included documents titled "Your Right to Representation." *Id.* at 139, 142, 153, 160.

At the hearing on August 14, 2019, Plaintiff appeared in person to testify. *Id.* at 39. The ALJ informed Plaintiff of his right to representation and asked if he had seen a list of possible

representatives. *Id.* at 39–40. Plaintiff confirmed he had. *Id.* at 40. The ALJ explained that Plaintiff could proceed without a representative, but that a representative could assist him in gathering medical records and other documents in support of his case, and could help present the case before an ALJ. *Id.* Plaintiff was told the court reporter could provide him with a list of free legal service providers. *Id.* at 41. Plaintiff stated he had no questions about getting a representative, and that he wished to proceed without a representative. *Id.* Plaintiff also testified to the substance of his claim. *Id.* at 44–60. Before the conclusion of the hearing, the ALJ requested additional records and provided Plaintiff with a pre-addressed, stamped envelope for that purpose. *Id.* at 63.

### B. Procedural History

In July 2017, Plaintiff filed an application for DIB and SSI, alleging disability as of December 2, 2015. *Id.* at 65, 78. Plaintiff's claim was denied initially and upon reconsideration. *Id.* at 76, 89, 104, 119. The ALJ held a hearing on August 14, 2019, at which Plaintiff, who was not represented, and a vocational expert, testified. *Id.* at 37–64. In a decision dated November 14, 2019, the ALJ found Plaintiff not disabled. *Id.* at 17–31. Following the ALJ's decision, Plaintiff retained counsel (*id.* at 12–13), who filed a request for review of the ALJ's decision to the Appeals Council (*id.* at 179–80). The Appeals Council denied Plaintiff's request for review, which rendered the ALJ's decision final. *Id.* at 1–3. This appeal followed.

## III. LEGAL STANDARD

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). The Court is "not permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g).

Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and corroborated by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (internal quotation marks and citation omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (internal quotation marks and citation omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

### B. Determining Disability

In order to be eligible for benefits under the Social Security Act ("SSA"), a claimant must show he is disabled by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled for SSA purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

C. **Sequential Evaluation Process For A Continuing Disability**

The SSA follows a five-step, sequential evaluation to determine whether a claimant is disabled under the SSA. 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if the claimant is not engaged in such activity, the ALJ determines whether the claimant has any impairments severe enough to limit his ability to work. *Id.* Third, if he has any severe impairments, the ALJ considers the medical evidence to determine whether the impairment or combination of impairments is included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If the claimant's impairment(s) medically equal one of the Listings, this results in a presumption of disability. *Sykes*, 228 F.3d at 262. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite his impairment. *Id.* at 263. Fourth, the ALJ must consider whether the claimant's RFC is adequate to perform his past relevant work. *Id.* Fifth, if his RFC is not sufficient to perform past work, the ALJ must determine whether there is other work in the national economy the claimant can perform. *Id.*

The evaluation continues through each step unless it is ascertained at any point the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the ultimate

burden of establishing steps one through four of this test. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019). The burden shifts to the Commissioner at step five to prove that the claimant can perform a job that exists in the national economy. *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004).

## IV. DISCUSSION

### A. Summary of the ALJ's Decision

At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity from January through December of 2016, but had not engaged in substantial gainful activity for the periods following. Tr. at 19–20. At step two, the ALJ found Plaintiff had the following severe impairments: PTSD; bipolar disorder; insomnia; depression; and anxiety disorder, with panic attacks. *Id.* at 20. At step three, the ALJ determined that Plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the Listings. *Id.* at 21–23. Based on all the evidence in the record, the ALJ then assessed an RFC for:

> a full range of work at all exertional levels but with the following nonexertional limitations: he can do work that can be learned in one month or less and that involves simple instructions. He can have occasional contact with supervisors and minimal contact with the general public. He can work in proximity of coworkers, but not together with them. He is able to maintain regular attendance and be punctual within customary tolerances.

*Id.* at 23–28. At step four, the ALJ determined Plaintiff is unable to perform any past relevant work because his previous work "involved the performance of semiskilled work." *Id.* at 28–29. At step five, based on the testimony of the vocational expert (*id.* at 52, 61–62), Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. *Id.* at 29. Accordingly, the ALJ found Plaintiff was not disabled during the relevant period. *Id.* at 30.

### B. Plaintiff's Arguments on Appeal

In the instant appeal, Plaintiff first argues that the ALJ did not elicit an informed waiver of representation, and that the ALJ failed to carry out the enhanced duty owed to unrepresented claimants. Pl. Br. at 8–16. Second, Plaintiff contends that the ALJ erred by not evaluating a report from Veterans' Affairs ("VA") granting Plaintiff partial disability ("VA Report"). *Id.* at 16–21. Third, Plaintiff asserts that the ALJ did not properly evaluate the medical opinion evidence of Dr. Iturmendi, who opined on Plaintiff's mental status. *Id.* at 22–24.

#### 1. Plaintiff's Waiver of Representation

Plaintiff argues that he did not provide a knowing and intelligent waiver of his right to counsel because he was not properly informed of his right prior to and during the hearing, and because his mental impairments precluded him from doing so. *Id.* at 8–15. Additionally, Plaintiff contends that the ALJ did not fulfill her heightened duty to develop the record given Plaintiff's unrepresented status. *Id.* at 15–16.

Though claimants do not have a constitutional right to counsel at a disability hearing, they do have a statutory right to counsel at such hearings. *Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 157 (3d Cir. 2008) (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1705). A claimant, after being fully informed of the benefits of obtaining representation,[2] can waive this right by a knowing and intelligent waiver. *Id.*; *see also Phifer ex rel. Phifer v. Comm'r of Soc. Sec.*, 84 F. App'x 189, 190 (3d Cir. 2003).

---

[2] Adequate notice could include explanation of "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *George v. Comm'r of Soc. Sec.*, No. 13-5179, 2014 WL 3955071, at *2 (D.N.J. Aug. 13, 2014) (quoting *Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 157 n.1 (3d Cir. 2008)). The Third Circuit has "not required that ALJs explain each of these listed items." *Vivaritas*, 264 F. App'x at 157 n.1.

7

Here, Plaintiff made a knowing and intelligent waiver of his right to representation. To begin, Plaintiff was properly informed of his right to representation. Plaintiff received multiple letters informing him of his right to counsel. Tr. at 123, 127, 135, 137, 139, 142–46, 155, 160–61. These letters are likely sufficient on their own to affirm Plaintiff's knowledge of his rights. *Phifer*, 84 F. App'x at 191 (stating that two letters from the Social Security Administration "alone show[] that [plaintiff] was given adequate notice of his right to counsel"); *Clapper v. Colvin*, No. 12-cv-1688, 2013 WL 6191139, at *8 (W.D. Pa. Nov. 26, 2013) (finding the plaintiff had sufficient notice of her right where she received four letters). Further, contrary to Plaintiff's assertions, the ALJ properly explained: the benefits of having a lawyer ("a representative could help you to gather medical records" and "present your case before an [ALJ]") (Tr. at 40); how Plaintiff was likely eligible for free legal services (*id.* at 41) ("[Y]ou may be eligible for representation that does not charge money, like legal services. . . ."); how the appeals process works (*id.*) ("[I]f you go ahead today and you are not happy with the decision that I make, you would be free to appeal that decision and you could get a representative at that time if you so cho[o]se."); the ALJ's role (*id.* at 42) ("My job today is to take a fresh, new look at all of the evidence . . . in order to make a decision as to whether or not you are disabled in accordance with the definitions in the Social Security Act."); that she could grant an adjournment to give Plaintiff an opportunity to retain counsel if he wished to do so (*id.* at 40) ("[Y]ou're going to make a decision whether . . . you would like me to grant you an adjournment to give you a chance to get a representative."); the vocational expert's role (*id.* at 59–60) ("The way we do this is I make up hypothetical questions . . . . And then I ask the VE is there any work—can this person, could that hypothetical person do Mr. Koci's past work or is there any other work."); and Plaintiff's ability to question the vocational expert at the hearing (*id.* at 62) (ALJ: "Did you have any questions about anything?" Claimant: "No, your honor." ALJ: "Or questions for the vocational expert." Claimant: "No, your honor.").

8

Next, Plaintiff did not demonstrate an inability to understand or to provide an informed waiver of his right to counsel.[3] At the hearing, Plaintiff affirmed that he had seen the list of possible representatives provided to him (*id.* at 40); he had no questions about obtaining representation (*id.* at 41); he understood how the hearing would proceed (*id.* at 42); and that he had no questions or objections regarding the evidence (*id.*). Plaintiff stated: "My decision [is] to go today without a representative," and nothing at the hearing indicated differently. *See Vivaritas*, 264 F. App'x at 158–59 (finding that an ALJ providing similar information regarding representation to the facts in this case "would be sufficient to establish that a claimant waiving her right to counsel during an ALJ hearing acted knowingly and intelligently").

The medical records show that Plaintiff attended four years of college (Tr. at 44); he had the cognitive ability to make appropriate decisions (*id.* at 397); and that his abstract verbal thinking/reasoning skills and problem-solving skills were intact and appropriate (*id.* at 779). Plaintiff also filed his claim, moved for reconsideration, and made a request for a hearing without the assistance of counsel. *Id.* at 65, 127, 136–37; *see also, e.g.*, *Godwin v. Kijakazi*, No. 3:20-CV-02421, 2022 WL 992736, at *1, 3 (M.D. Pa. Apr. 1, 2022) (holding that plaintiff knowingly and intelligently waived her right to representation when plaintiff had severe mental impairments such as bipolar disorder, but she received prior written notice of her rights and the ALJ explained her rights at the hearing); *Miller v. Astrue*, No. CIVA 08-4838, 2009 WL 1876032, at *10 (E.D. Pa. June 23, 2009) (explaining that plaintiff waived his rights where he had a high school education

---

[3] Plaintiff argues that there was "subtle pressure" from the ALJ to proceed with the hearing because of the ALJ's suggestion that if Plaintiff wanted to adjourn and obtain representation, the hearing would be delayed an additional three to four months. Pl. Br. at 14 n.6. That argument is unavailing. *See Morris v. Comm'r of Soc. Sec.*, No. CV 17-757, 2018 WL 395736, at *5–6 (D.N.J. Jan. 12, 2018) ("[I]t is acceptable for an ALJ to mention that an adjournment will cause additional delay.").

and was literate, and there was "no information in the record suggesting that plaintiff has mental limitations that would prevent him from understanding his right to representation").[4]

The Court finds that under these circumstances, Plaintiff knowingly and intelligently waived his rights to representation at the hearing. It is the plaintiff's burden to demonstrate that the ALJ failed to adequately develop the record in the proceedings below. *Vivaritas*, 264 F. App'x at 158; *Morris v. Comm'r of Soc. Sec.*, No. CV 17-757, 2018 WL 395736, at *6 (D.N.J. Jan. 12, 2018). Where a claimant is *pro se*, the ALJ has a duty to assist in the development of the record. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). "[T]he ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Id.* (quoting *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)); *see also Turby v. Barnhart*, 54 F. App'x 118, 122 (3d Cir. 2002) (noting that the ALJ's "duty [to develop the record] is most acute where the claimant is unrepresented"). The ALJ "must assume a more active role in developing the evidentiary record." *Kulik v. Kijakazi*, No. CV 20-2344, 2022 WL 580454, at *6 (E.D. Pa. Feb. 24, 2022). Remand is only proper where the absence of counsel created "clear prejudice or unfairness at the administrative hearing" to the claimant. *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979).

Here, the ALJ fulfilled her enhanced duty to develop the record.[5] The ALJ confirmed Plaintiff had reviewed the entire record (ALJ: "Have you been given the opportunity to review

---

[4] Plaintiff claims that the ALJ allowed him to operate under the incorrect assumption that he would have a second hearing. Pl. Br. at 13–14. However, this is refuted by a plain reading of the transcript. Tr. at 41 ("[I]f you go ahead today and you are not happy with the decision that I make, you would be free to appeal that decision and you could get a representative at that time if you so cho[o]se."). Indeed, Plaintiff obtained counsel during the appeal of the decision.

[5] Plaintiff's claim that he was "prevented [ ] from testifying on his own behalf" (Pl. Br. at 15) is contradicted by the hearing transcript, where Plaintiff testified about his alleged impairments. Tr. at 44–60 (ALJ: "Mr. Koci, I'll need you to testify under oath." The claimant was then sworn in and began testifying.). The same is true of Plaintiff's argument that he was "prevented [ ] from . . . examining the government's [vocational expert]." Pl. Br. at 15; Tr. at 62 ("ALJ: [Did you have any] questions for the vocational expert[?] Claimant: No, your honor.").

10

the documents in your file. . . ? Claimant: Yes, I have." (Tr. at 42)). The ALJ asked Plaintiff if he had additional documents, and when he did, the ALJ added them to the record. *Id.* at 43. The ALJ concluded there was missing evidence helpful to her determination, and provided Plaintiff with an addressed and pre-stamped envelope to send in those documents. *Id.* at 63. Further, the ALJ independently took steps to secure additional evidence and alerted Plaintiff of his ability to request a supplemental hearing or submit a written statement.[6] *Id.* at 328–29, 824–959. *Kulik*, 2022 WL 580454, at *6–7 (finding ALJ "sufficiently discharged his duty to develop the record" where the ALJ requested additional medical records on behalf of the plaintiff).

Additionally, Plaintiff fails to demonstrate the requisite prejudice. Plaintiff secured legal counsel on December 16, 2019—prior to the conclusion of the administrative process. Tr. at 12–13 . After Plaintiff's counsel requested review of the hearing decision in January 2020, the Appeals Council informed Plaintiff that he could submit additional evidence (*id.* at 10), but there is no indication Plaintiff did so. In addition, Plaintiff fails to articulate any specific condition not sufficiently addressed by other evidence in the record, or any documents that were not considered by the ALJ. *Kulik*, 2022 WL 580454, at *6 ("Absent a showing that the ALJ failed to consider one or more of Plaintiff's impairments, Plaintiff has not established that he was prejudiced by the ALJ's alleged failure, if any even existed, to develop the record."); *Sesko v. Comm'r of Soc. Sec.*, No. 08-CV-0151, 2009 WL 2579304, at *10 (W.D. Pa. Aug. 18, 2009) (affirming ALJ's decision and a waiver of plaintiff's right to representation, in part because "Plaintiff did not point to any medical evidence which was not produced that contradicts the ALJ's findings."). Therefore,

---

[6] Plaintiff contends that while the ALJ notified him that additional evidence was secured, the evidence itself was not provided to him. Pl. Br. at 13 n.4. Nevertheless, the September 30, 2019 letter from the ALJ indicates otherwise. Tr. at 328 ("I am enclosing the additional evidence below for your review.").

11

Plaintiff's argument that the ALJ failed to adequately develop the record given Plaintiff's *pro se* status is unpersuasive.

### 2. The ALJ's Consideration of the VA's Report

Plaintiff further argues that the ALJ erred by not evaluating the VA Report. Pl. Br. at 16–22. On November 28, 2017, the VA Report awarded Plaintiff benefits under its entitlement program, assigning a 70% disability rating to his PTSD. Tr. at 824–25. The VA explained that it did not assign a 100% rating because the evidence did not show Plaintiff's condition caused a "total occupational and social impairment." *Id.* at 825. The ALJ acknowledged the VA Report, but explained that under the revised regulations "certain evidence is inherently neither valuable nor persuasive." *Id.* at 27–28. Plaintiff contends that the ALJ was not "free to ignore" the VA Report and its conclusions, and that the ALJ must "attribute at least 'some weight'" to it. Pl. Br. at 16.

However, for claims filed on or after March 27, 2017, revised regulations were implemented changing the "process by which adjudicators, including ALJs, evaluate medical and other evidence." Opp. at 22. Plaintiff's claim was filed in July 2017, and thus the revised regulations are applicable here. Tr. at 65, 78. These revised regulations explain that an ALJ is not required to "provide any analysis in [her] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [the claimant is] disabled . . . or entitled to any benefits." 20 C.F.R. §§ 404.1504, 416.904; *see also* 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1). The VA is explicitly included as an agency subject to this regulation. 20 C.F.R. §§ 404.1504, 416.904. Plaintiff's argument that the ALJ must provide "some weight" to the VA Report relies entirely on outdated case law decided before the 2017 revised regulations were in place. *See D.G. v. Comm'r of Soc. Sec.*, No. 20-2774, 2021 WL 3047065, at *4 (D.N.J. July 20, 2021) (finding that the ALJ's decision complied with

the revised regulations where the ALJ did not consider the disability determination made by the VA); *John B. v. Kijakazi*, No. 3:19-cv-16558, 2021 WL 3630307, at *10–11 (D.N.J. Aug. 17, 2021). Thus, under the revised regulations and updated case law, Plaintiff's argument that the ALJ needed to provide a further analysis of the VA Report fails.

### 3.      The ALJ's Evaluation of Dr. Iturmendi's Medical Opinion

Next, Plaintiff argues that the ALJ erred in her analysis of Dr. Iturmendi's opinion of Plaintiff's mental status. Pl. Br. at 22–24. The ALJ found Dr. Iturmendi's opinion unpersuasive, because the opinion was "vague" and the doctor "failed to adequately identify or define any specific functional limitations of the claimant." Tr. at 27. In addition, the ALJ opined that the record supported *moderate* limitations, rather than *mild* limitations as found by Dr. Iturmendi. *Id.* Plaintiff, however, claims that Dr. Iturmendi's findings purportedly demonstrate an "inability to sustain an 8 [hour] workday or a 40 hour workweek" and that Dr. Iturmendi's other findings were improperly disregarded by the ALJ. Pl. Br. at 22–24.

On November 17, 2017, Judy M. Iturmendi, Psy.D., performed a consultative mental examination. Tr. at 777–79. Plaintiff was cooperative and reported he had never been hospitalized for psychiatric problems. *Id.* at 777. He told Dr. Iturmendi he had participated in therapy and/or counseling through the VA in August 2017. *Id.* He explained he was typically able to cook, clean, do his laundry, perform personal hygiene and self-care tasks, and socialize with his friends, although he was intermittently homeless. *Id.* According to Dr. Iturmendi, Plaintiff's level of concentration and his short-term memory were "spotty," because he could not spell the word "world" backwards and he could not recall a series of words at one minute. *Id.* at 778. Dr. Iturmendi found that, with a reduction of Plaintiff's anxiety, he would be able to "appropriately encode and retrieve information at a level that should not significantly impact his acquisition of new information." *Id.* Therefore, Dr. Iturmendi concluded that Plaintiff had some areas of "mild

13

deficits" and that "[s]tabilizing his mood and decreasing his psychological stressors would probably improve his overall functioning," but that he was able to manage his own funds. *Id.* at 779.

When the ALJ evaluates the persuasiveness of a medical opinion, the most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a). With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)," the more persuasive such opinion will be. 20 C.F.R. § 404.1520c(c)(1). In terms of consistency, a medical opinion will be more persuasive when it is consistent "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Importantly, it is not the Court's role to reweigh the record evidence. *J.L.B. v. Comm'r of Soc. Sec.*, No. CV 20-7851, 2022 WL 17039305, at *4 (D.N.J. Nov. 17, 2022).

Plaintiff's contention that the ALJ should have found Dr. Iturmendi's report more persuasive is unavailing. First, Plaintiff's interpretation that Dr. Iturmendi's findings "evidenc[e] an inability to sustain an 8 [hour] workday or a 40 hour workweek," Pl. Br. at 22, does not stem from an actual finding of Dr. Iturmendi. Indeed, most of Dr. Iturmendi's findings were unremarkable, and her ultimate conclusion was that Plaintiff had some areas of *mild* deficits. Tr. at 779. Next, the ALJ explained that Dr. Iturmendi's conclusion that Plaintiff had "mild deficits" was inconsistent with the record. *Id.* at 27. In fact, the ALJ assigned a *more favorable* RFC to Plaintiff when she concluded that Plaintiff had moderate limitations in three of the four broad areas of mental functioning. *Id.* at 21–22, 27. Third, the ALJ explained that she found Dr. Iturmendi's opinion unpersuasive because it was "vague" and "failed to adequately identify or define any specific functional limitations of the claimant." *Id.* at 27. For example, Dr. Iturmendi characterized Plaintiff's short-term memory as "spotty" based on him not remembering a series of

14

words after a minute, *id.* at 778, but did not opine on how that would translate into workplace limitations. Therefore, the Court finds that the ALJ's evaluation of Dr. Iturmendi's opinion is sufficient, under these circumstances, to describe the supportability and consistency factors. *See Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) (finding the ALJ properly determined that a medical opinion was unpersuasive where the opinion was "vague"). For these reasons, the ALJ did not err in her evaluation of Dr. Iturmendi's opinion.

V.  **CONCLUSION**

For the reasons above, the ALJ's decision is affirmed. An appropriate Order will follow.

**DATE:** March 28, 2024

                                                   */s/ Claire C. Cecchi*
                                                   **CLAIRE C. CECCHI, U.S.D.J.**